McKinney, J.
delivered the opinion of the court.
This is an action of trover. On the trial in the Circuit Court, verdict and judgment were rendered against the plaintiff in error, who was defendant in the action; several errors have been assigned upon the records, and insisted upon in argument by the counsel for the plaintiff in error.
1. The first, and perhaps the most important question in the case, as a matter of general practice, arises upon the admission of the deposition of William P. Gillett, as evidence to the jury. As presented in the records before us, it is unaccompanied by either caption, certificate of the justice, notice, commission, or authority of any kind, for taking the same. Nothing appears but simply the interrogatories propounded by the plaintiff below, on whose behalf it was taken, and the answers of the witness thereto. There seems to have been no cross-examination; and the record is silent as to whether or not, the deposition was regularly taken; nor does it appear that any specific exception was taken in the court below, upon the ground of informality, irregularity, or want of authority in taking said deposition. All the information to be derived from the record, is contained in the following entry, viz: “Plaintiff next introduced the deposition of William P. Gillett, hereto annexed, marked No. 2; to the reading of which defendant objected, but the objection was overruled, and the deposition read.”
*19 Upon this general and indefinite objection, we are called upon to reverse the judgment of the Circuit Court, upon the ground that it must be taken as true, by this court, that the deposition was admitted to the jury in the same dress, and imperfect form, in which it is presented to us. We cannot yield our assent to a proposition so destitute of support, either in reason ór authority. On the contrary, we hold, first, that in the silence of the record as to any specific exception in the court below, in respect to matters of form, regularity, or authority in taking the deposition, it is the duty of this court to presume, in favor of an enlightened and correct administration of the law in the circuit court, that the deposition was regularly taken, upon proper authority, and in accordance with all the formalities and solemnities prescribed by law, or the rules of the court. It cannot, for a moment, be believed, that the circuit judge would have admitted the so-called deposition to go to the jury, if objected to upon either of the grounds relied upon in the argument here.
2. But, in the second place, we hold that a general objection to the reading of the deposition, as in the present case, will be construed, in this court, as referring, merely to the competency, or relevancy, or legal effect, of the testimony contained therein; and will not be considered as embracing or extending to any matter of form, or question of regularity, or authority, in respect to the taking of such deposition. If it be liable to objection upon either of the latter grounds, the specific exception must be pointed out with reasonable precision and certainty; and if overruled in the inferior court, must be set forth in the bill of exceptions, and no *20 exception not thus taken and set forth in the record, can be raised or assigned as error in this court. To hold otherwise, would, not unfrequently, enable a party to obtain a reversal, perhaps, upon some mere formal or technical objection, not made in the inferior court, and which, had it been taken there, might have been easily obviated. Inasmuch, therefore, as the deposition in question is not subject to any objection of which the plaintiff in error can avail himself, upon the rule as here laid down, there is no error in this point of the case.
3. It is insisted that the court erred in permitting Edward Bell to be examined as a witness. We do not think so. The supposed interest of the witness, if indeed, he had any -interest whatever, was too remote to constitute any legal exception to his competency; at most, it could only go to his credit. In the strongest aspect of the objection, for the plaintiff in error, the testimony of the witness would only tend to increase a fund, which, upon a contingency, was collaterally liable for the payment of a debt due to him.
4. The third error relied upon, is in permitting the counsel for the defendant in error, in his concluding argument to the jury, to read from a bill of exceptions, taken at a former trial of ...the cause, a portion of the evidence of John Garvin, who had been examined, at the previous trial, as a witness for the plaintiff in error, and was in attendance at the latter trial, but was not examined. This 'was allowed to be read, as we learn from the bill of exceptions, in connexion with the opinion of the Supreme Court, predicated upon the facts in said former bill of exceptions, for the purpose of illustrating the application of a point of law settled *21 in said opinion. And the court instructed the jury that they must not regard it as evidence in the cause, nor permit it to have any influence in their minds. Although the propriety of this practice seems to us very questionable, to say the least, still, we cannot hold that it constituted error for which the judgment ought to be reversed; more especially, as from the specific instructions given to the jury respecting the matter, it cannot be supposed to have had any improper influence upon their verdict. The supervisory control of this court, over the discretion of the Circuit Courts, in the conduct of trials before them, as has been frequently remarked, should not be interfered with, except in cases of abuse tending to defeat the due administration of justice.
5. His Honor, the circuit judge, stated to the jury that a' “rightful demand by the plaintiff, and a refusal by the defendant, would be prima facie evidence of a conversion.” The counsel for the plaintiff in error, insists, that in addition to demand and refusal, the court should have instructed the jury, that it was incumbent upon the plaintiff to prove, that the defendant, at the time of the demand, had it in his power to deliver up the property demanded, and if unable to do so, that a demand and refusal would not be sufficient evidence of a conversion, and for this is cited 1 Green, leaf, section G44. The principle laid down in this authority is inapplicable to the facts of the case under consideration, and as understood and insisted upon by the counsel, is, we think, in one respect erroneous. The proof shows that the plaintiff in error, obtained possession of the lumber alleged to have been converted by him, in the character of bailee or agent; and that, in violation of his obligations to his principal, and in *22 equal violation of bis authority, he afterwards recognized the title of another, for whose benefit he wrongfully sold and disposed of the property. This was of itself, a conversion, and dispensed with the necessity of demand and refusal. All the authorities concur, that if the possession was lawful, as by delivery, finding, or bailment, there must be either direct proof of a conversion, by evidence of some tortuous act, or indirect evidence by refusal to deliver after demand. Starkie on Ev., vol. 2, part 2, 1156. The demand and refusal do not necessarily, amount to a conversion, but are only prima facie evidence of it; and if it be apparent that there really was no conversion, the demand and refusal are inoperative. 3 Steph. N. P. 2685. As, if the property has been attached, in the hands of the bailee or agent, Id. 2709, or is held bound by some valid lien; and other cases which might be put. But if the party absolutely refuse to give up the property, and there be no ground to justify or to explain the refusal, then the presumption of conversion is a presumption of law, upon which the jury ought to find a conversion. 3 Starkie’s Ev. 3 ed. 1161; 3 Steph. N. P. 2887. But where the plaintiff is prepared to prove some distinct, actual conversion, no evidence of demand or refusal is necessary. 2 Saund. 47. It would be very absurd, to hold, as insisted upon in this case, that where there had been an actual conversion, by means of which the defendant had parted with the possession of the property, and absolutely disabled himself, by his wrongful act, to deliver the property, that the plaintiff shall, in order to entitle himself to maintain an action of trover, not only be required to prove a demand and refusal, but, likewise, that the defendant, at the time *23 of tbe demand, had it in his power to give up the property, when the very gravamen of the action is, that he had voluntarily disabled himself to do so. And even in cases where demand and refusal may not amount to a conversion, as where the goods have been attached, and other cases of similar character, it would seem to us not less absurd, and contrary to legal analogy, to hold that the onus should be put upon the plaintiff to show, affirmatively, that the defendant had it in his power to deliver the property; we hol'd the law to be that the justification or excuse for refusing to deliver in such cases, constitutes matter of defence to be established by the defendant, after a case of presumptive conversion has been made out by evidence of a demand and refusal, and if the position laid down by Mr. Greenleaf is intended to be differently understood, with the utmost respect for his learning and general accuracy, we dissent from his authority. To require of the plaintiff to make such proof, would, in many cases, be to require an impossibility; for how can he be supposed to know, or be able to prove, what disposition has been made of the property? or whether or not the defendant has it in his power to deliver it? Such, in our opinion is not the law.
We think there is no error in this record, and affirm the judgment.